UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
       :
CRAIG FRANKLIN,       :
       :  **ORDER GRANTING IN PART**
      Plaintiff,  :  **AND DENYING IN PART**
  -against-       :  **DEFENDANTS' MOTION TO**
       :  **DISMISS**
STEPHEN WATERS; COMPASS ADVISERS  :
GROUP, LLC; COMPASS PARTNERS  :  16 Civ. 9819 (AKH)
ADVISERS, LLP; COMPASS PARTNERS  :
INTERNATIONAL, LLP; COMPASS  :
PARTNERS INTERNATIONAL II, LLP,  :
       :
      Defendants.  :
       :
-------------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

       Plaintiff Craig Franklin ("Plaintiff") filed this employment action on December 20, 2016. Broadly stated, plaintiff claims that he is entitled to unpaid compensation under his employment contract and that he was wrongfully terminated after he complained about his unpaid wages. On March 20, 2017, plaintiff filed an amended complaint, which contained claims against a number of entities that are no longer in the case, including Waters International, LLC, Compass Partners Investments Master Fund LP, and Compass Partners Investments Co-Invest Fund LP, all of which were based in the United Kingdom. These foreign defendants moved to dismiss the amended complaint, and the Court heard oral argument on August 22, 2017. On August 29, the Court issued an order dismissing all but those claims alleged against the Domestic Defendants,[1] finding, among other things, that plaintiff had failed to sufficiently

---

[1] Stephen Waters, Compass Advisers, LLC, and Compass Partners Advisors, LLP (the "Domestic Defendants") answered the amended complaint on April 14, 2017.

allege that the Court had personal jurisdiction over the foreign defendants. *See* Order Dismissing Complaint with Leave to Amend, ECF 84, at 2–3.[2]

The Court granted plaintiff leave to amend, and plaintiff did so on October 6, 2017. The Second Amended Complaint added two new foreign defendants, Compass Partners International, LLP and Compass Partners International II, LLP (collectively, the "Defendants" or "UK Defendants"), both of which are based in the United Kingdom. As with the first amended complaint, the Domestic Defendants answered on October 27, 2017. As against the UK Defendants, plaintiff's Second Amended Complaint raises claims for breach of contract and unjust enrichment, along with violations of the New York Labor Law ("NYLL").[3] Now before the Court is the UK Defendants' motion to dismiss the Second Amended Complaint under Rules 12(b)(2) and 12(b)(6). For the reasons stated herein, the motion is granted in part and denied in part.

**Background**

The following facts are taken from plaintiff's Second Amended Complaint, which I must "accept[] as true" for the purpose of this motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff claims that the defendants in this case operate collectively, through distinct corporate entities, as a mercantile banking firm known as "Compass." Defendant Waters owns the Domestic Defendants outright and holds an indirect interest in the UK Defendants. Waters' participation largely ties these corporate entities together.

Plaintiff was hired in 2012 to help run the firm's asset management business. His primary role was to help identify investments, perform due diligence, and provide advice on

---

[2] The Court also held that certain other defendants were "not legal entitles capable of being sued." Order Dismissing Complaint with Leave to Amend, ECF 84, at 3.
[3] Specifically, plaintiff alleges the following counts against the UK Defendants: I (Breach of Contract), IV (Non-Payment of wages under the NYLL § 190), V (Retaliation under the NYLL § 215), and VI (Quantum Meruit and Unjust Enrichment).

potential private equity deals that the firm might enter into. Although plaintiff's role seems fairly clear, the written documents are not. Plaintiff and defendant Waters negotiated terms electronically by revising a word document that outlined the terms of plaintiff's employment. *See* Second Amended Complaint, ECF 87, Ex. A. The document was not signed and did not identify any particular party to be charged. Plaintiff assented via email, stating: "I spent some time reviewing the revised terms and I am in agreement on all terms outlined herein (NO changes marked to your document). Please use this email as my formal acceptance of the terms . . . ." *Id.* The document to which plaintiff assented provided for a base salary, estimated bonuses, and other conditional compensation that underlie plaintiff's claim.

As early as 2013, it appears that a dispute developed over the terms of plaintiff's compensation, which became the subject of ongoing negotiations. When the parties count not reach an agreement, plaintiff's services were terminated in October 2016. This lawsuit followed.

Although the UK Defendants raise a number of arguments in their papers, the central issue before the Court is whether plaintiff has adequately alleged that he was jointly employed by the Domestic and UK Defendants. The main thrust of plaintiff's claim is that although his paystubs list Compass Partners Advisors LLP as his employer, he actually evaluated investment opportunities on behalf of all the Compass entities, foreign and domestic. Plaintiff claims, with email documentation, that he accepted a position with the firm on the understanding that he would report directly to Waters, but would report collaterally to Frank Rudd and Anthony Marraccino. Rudd and Marraccino, who worked solely for the UK Defendants, allegedly interviewed plaintiff before he was hired and participated in his annual performance reviews. Plaintiff's employment contract also references "Specific Milestones" related to his performance, one of which discusses "Portfolio transactions for FR team," apparently referencing Frank Rudd's work for the UK Defendants. Finally, plaintiff claims—and defendants admit—that the UK Defendants listed plaintiff as an employee in their marketing materials. Based on these and

3

other allegations,[4] plaintiff argues that he was jointly employed by the Domestic and UK Defendants.

## Discussion

### A.     Legal Standards

Defendants filed a motion to dismiss the complaint under Federal Rules 12(b)(2) and (b)(6). In ruling on a motion to dismiss, the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001), *as amended* (Apr. 20, 2001). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). When personal jurisdiction is challenged under Rule 12(b)(2), before discovery has been taken, a plaintiff's factual allegations are taken as true and the "pleadings and affidavits are construed in the light most favorable to plaintiffs, resolving all doubts in their favor." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). At this stage, "plaintiff need persuade the court

---

[4] Plaintiff also claims that Waters, who owns the Domestic Defendants outright and holds a stake in the UK Defendants, exercised total financial control over the UK Defendants. Plaintiff appears to use this allegation as the basis for a veil piercing claim. On this issue, the Court reiterates its previous instruction that "the fact that waters may have owned the defendant companies does not allow plaintiff to pierce their corporate veils." *See* Order Dismissing Complaint with Leave to Amend, ECF 84, at 3. To the extent that plaintiff attempts to use this as a basis for demonstrating personal jurisdiction, the Court need not reach this question in light of the Court's holding on joint employment.

4

only that [his] factual allegations constitute a *prima facie* showing of jurisdiction." *Id.*[5] In order to make a prima facie showing of jurisdiction, plaintiff must meet three requirements: "First, the plaintiff's service of process upon the defendant must have been procedurally proper. Second, there must be a statutory basis for personal jurisdiction that renders such service of process effective. . . . [And] [t]hird, the exercise of personal jurisdiction must comport with constitutional due process principles." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016) (internal quotation marks omitted) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012)).

To establish personal jurisdiction, plaintiff relies solely on Section 302(a)(1) of New York's long-arm statute. *See* N.Y. C.P.L.R. § 302(a)(1). Section 302(a)(1) allows a court to exercise personal jurisdiction over a non-domiciliary that "transacts any business within the state or contract anywhere to supply goods or services in the state." C.P.L.R. § 302(a)(1); *see also Werst v. Sarar USA Inc.*, No. 17-CV-2181 (VSB), 2018 WL 1399343, at *3 (S.D.N.Y. Mar. 16, 2018) ("New York's long-arm statute . . . allows a court to exercise specific personal jurisdiction over a non-domiciliary if that party transacts any business within the state and if the claim arises from these business contacts." (internal quotation marks omitted) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006))). This test has two prongs. First, "[t]o determine whether a party has 'transacted business' in New York, courts must look at the totality of circumstances concerning the party's interactions with, and activities within, the state." *D.H. Blair & Co.*, 462 F.3d at 105 (internal quotation marks omitted) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787 (2d Cir.1999)). And second, "[t]o meet the 'arising out of' requirement of N.Y. C.P.L.R. § 302(a), there must be 'a

---

[5] Of course, plaintiff must eventually "establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. But until such a hearing is held, a prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981).

5

substantial nexus' between the transaction of business and the claim." *Id.* (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir.1996)).

"If the court finds jurisdiction under C.P.L.R. § 302(a), 'it must next determine whether such an exercise of jurisdiction comports with due process.'" *Werst*, 2018 WL 1399343, at *3 (quoting *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 323 (S.D.N.Y. 1998)). To comport with due process, a defendant must "have certain minimum contacts with [with forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Plaintiff's claim is based on specific jurisdiction, which "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). In cases based on specific jurisdiction, the "'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal citations omitted) (first quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984), and then quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

### B. Plaintiff has Adequately Alleged Personal Jurisdiction

Although the UK Defendants have moved to dismiss the complaint on substantive as well as jurisdictional grounds, the central issue is whether plaintiff has adequately alleged a joint employment relationship. Put differently, the parties appear to agree that if the UK Defendants jointly employed plaintiff in New York, doing so would be sufficient to render defendants amenable to jurisdiction in New York. *See, e.g.*, *Williams v. Preeminent Protective Servs., Inc.*, 81 F. Supp. 3d 265, 271 (E.D.N.Y. 2015). And as to the substantive claims, the UK Defendants argue that plaintiff cannot maintain a breach of contract or a claim under the NYLL

against them precisely because they were not parties to the contract and were not plaintiff's employer. Because these issues all hinge on the same question—joint employment—the Court considers them together.

To analyze questions of joint employment in the personal jurisdiction context, courts often look to federal labor law for guidance. *See Mao v. Sands Bethworks Gaming LLC*, No. 15-CV-6252 (JMF), 2016 WL 1717220, at *3 (S.D.N.Y. Apr. 28, 2016). In traditional employment relationships, outside of the joint employment context, "[t]he Second Circuit has articulated that if a purported employer: '(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records,' then such an individual or entity may be held liable under the FLSA." *Perez v. Westchester Foreign Autos, Inc.*, No. 11 CIV. 6091 ER, 2013 WL 749497, at *6 (S.D.N.Y. Feb. 28, 2013) (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)); *see also Mao*, 2016 WL 1717220, at *3 (applying these factors in a joint employer context to analyze personal jurisdiction). To analyze questions of joint employment, the Second Circuit has clarified that:

> Carter's test for "formal control" over workers is sufficient but not necessary to establish joint employment because an entity that lacks formal control may nevertheless exercise "functional control," as reflected by six non-exclusive factors: (1) whether the purported joint employer's premises and equipment were used for plaintiffs' work; (2) whether plaintiffs belonged to an organization that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line job that was integral to the purported joint employer's process of production; (4) whether responsibility under the contracts could pass from one vendor to another without material changes; (5) the degree to which the purported joint employer supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the purported joint employer.

*Godlewska v. HDA*, 916 F. Supp. 2d 246, 257 (E.D.N.Y. 2013), *aff'd sub nom. Godlewska v. Human Dev. Ass'n, Inc.*, 561 F. App'x 108 (2d Cir. 2014) (quoting *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 72 (2d Cir. 2003)). The Court in *Zheng* made clear that this list of factors was not exclusive; the central inquiry is whether, "based on the circumstances of the whole activity," and "viewed in light of the economic reality," the defendants should be considered plaintiff's employer. *Zheng*, 355 F.3d at 71–72 (internal quotation marks omitted) (first quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947), and then quoting *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961)).

       As described above, plaintiff's Second Amended Complaint outlines a number of contacts between the UK Defendants and New York, all of which are tied in some way to plaintiff's allegation that he was jointly employed by them. For instance plaintiff alleges that Rudd and Marraccino, both of whom were employed solely by the UK Defendants, participated in his interview, supervised his performance, and conducted annual reviews of his work. *See* Second Amended Complaint, ECF 87, at ¶¶ 32–38. All of these facts could be interpreted as giving the UK Defendants a role in plaintiff's hiring, supervision, and setting the terms of his employment with Compass. Although plaintiff's paystubs indicate that he was ostensibly paid by Compass Partners Advisors LLP, he claims that a significant portion of his work related to potential investments undertaken by the UK Defendants, and the UK Defendants even listed him on their marketing materials. *See id.* at ¶ 36, *see also id.*, Ex. F, I. Plaintiff's claim is also buttressed by the fact that the parties did not enter into a traditional employment contract, arguably indicating that the parties had an employment-at-will relationship with no defined corporate entity. *See id.*, Ex. A. In addition, plaintiff also alleges that the UK Defendants signed a number of non-disclosure agreements in New York that were directly tied to potential investments that plaintiff worked on. *See id.* at ¶ 39 n.4. Finally, plaintiff claims that a portion of the compensation he now seeks was tied to the carried interest on a deal entitled "Project

Penguin," a profitable investment made by the UK Defendants. *Id.* at ¶¶ 52–54. All of these alleged contacts have a "substantial nexus" to the underlying claim. *See D.H. Blair & Co.*, 462 F.3d at 105.

Viewed in the light most favorable to plaintiff, and based on the non-exclusive factors set forth in *Zheng v. Liberty Apparel Co.* and other cases, plaintiff's allegations are sufficient to make out a prima facie case of personal jurisdiction.[6] Defendants' arguments to the contrary raise factual disputes that cannot be addressed without proper discovery. At this stage in the litigation, I hold that plaintiff has carried his burden.

For similar reasons, I find that plaintiff has established a prima facie case that the exercise of jurisdiction comports with due process. If proven, plaintiff's allegations establish sufficient minimum contacts with New York such that maintaining the suit in this forum "does not offend traditional notions of fair play and substantial justice." *See Int'l Shoe Co. v. Washington*, 326 U.S. at 316. Broadly stated, plaintiff has alleged that the UK Defendants acted as his joint employer, used his services to investigate investment opportunities in New York on behalf of the UK Defendants, and even entered into non-disclosure agreements in New York related to those potential investment opportunities. And all of this allegedly took place over a four-year period. These allegations are sufficient to suggest that the UK Defendants purposefully directed business activities towards New York in exchange for the benefits and protections of New York law. *See Burger King Corp.*, 471 U.S. at 476–79 (discussing the "purposeful availment" requirement in the context of contractual agreements, and looking to the

---

[6] The cases that defendants cite in support of dismissal are largely distinguishable on their facts. For instance, in *Mao v. Sands Bethworks Gaming LLC*, the court dismissed the complaint because the plaintiffs' sole allegation concerning joint employment was that the defendants were partially responsible for maintaining the plaintiffs' work schedule. *Mao*, 2016 WL 1717220, at *3. Similarly, in *Cannon v. Douglas Elliman, LLC*, the plaintiffs did not plead any facts that could suggest that the individual defendants "play[ed] a role in supervising [their] work." No. 06 CIV.7092, 2007 WL 4358456, at *4 (S.D.N.Y. Dec. 10, 2007). Here, plaintiff has not relied on conclusory recitations of the elements of a joint employer arrangement—instead, plaintiff has alleged specific facts that give rise to the inference that the UK Defendants acted functionally as his employer and played a role in his hiring and ongoing supervision.

parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and [their] actual course of dealing" to "determin[e] whether the defendant purposefully established minimum contacts with the forum").

### C. Plaintiff's Substantive Claims

Plaintiff's substantive claims for breach of contract and violation of the NYLL are inextricably linked to the issues already addressed. As I previously explained, in the absence of any clarity as to the precise party who employed plaintiff, the case shall continue as to all defendants. Without any clarity, every defendant is potentially liable.

Defendants have separately moved to dismiss plaintiff's claim for unjust enrichment, arguing that the claim is inconsistent with a breach of contract claim. "[T]o succeed on a claim for unjust enrichment under New York law, a plaintiff must prove that '(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover[.]'" *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 55 (2d Cir. 2011) (quoting *Briarpatch Ltd. v. Phx. Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004)). It is generally true that "New York law . . . 'permits the alternative pleading of breach of contract and unjust enrichment claims—and the survival of both claims at the motion to dismiss stage'—where the applicability of the contract is disputed." *Hallmark Aviation Ltd. v. AWAS Aviation Servs., Inc.*, No. 12 CIV. 7688 JFK, 2013 WL 1809721, at *5 (S.D.N.Y. Apr. 30, 2013) (quoting *IceboxScoops v. Finanz St. Honor, B.V.*, 676 F. Supp. 2d 100, 114 (E.D.N.Y.2009)); *see also* Fed. R. Civ. P. 8(d)(3) (permitting inconsistent pleading). But here, there is no dispute as to the validity of the contract. It is clear that a contract was formed. The only issue is whether one, or all, the Compass parties are liable on that contract. "Where, as here, . . . the 'matter is controlled by contract' and the claim for unjust enrichment seeks the same relief as is sought for breach of contract, the unjust enrichment claim is properly dismissed as duplicative." *LG Capital Funding, LLC v. Ubiquity, Inc.*, No. 16-

cv-3102 (LDH) (SMG), 2017 WL 3173016, at *3 (E.D.N.Y. May 12, 2017); *Digizip.com, Inc. v. Verizon Servs. Corp.*, 139 F. Supp. 3d 670, 683 (S.D.N.Y. 2015) (dismissing unjust enrichment claim as duplicative of breach of contract claim when the parties did not dispute the validity of the contracts). Plaintiff's unjust enrichment claim is duplicative of his breach of contract claim and is therefore dismissed.

For the reasons stated in this Order, the motion to dismiss for failure to state a claim is granted in part and denied in part. Plaintiff's sixth cause of action for unjust enrichment is dismissed with prejudice; defendants' motion to dismiss the remaining claims is denied. The motion to dismiss for lack of personal jurisdiction is also denied. The clerk is instructed to terminate the motion (ECF 105). The parties shall appear for a status conference on April 20, 2018 at 10:00 a.m. to chart further progress in the case.

SO ORDERED.

Dated: April 10, 2018
New York, New York

/s/ Alvin K. Hellerstein
ALVIN K. HELLERSTEIN
United States District Judge