# RASCO | KLOCK

———————————— ATTORNEYS ————————————

RASCO | KLOCK | PEREZ | NIETO

**James Halter**
**305.476.7100 (Main)**
**305.476.5141 (Direct)**
**305.718.0639 (Facsimile)**
jhalter@rascoklock.com

February 10, 2020

**BY ECF AND BY HAND**
The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re:   *Craig Franklin v. Stephen Waters et al.,*
>        SDNY Case No. 16 Civ. 9819 (AHK)

Dear Judge Hellerstein:

We represent Plaintiff Craig Franklin. As instructed by the Court on Friday, February 7, 2020, enclosed please find, as Exhibit A, a deposition and document subpoena to Frank Rudd (an individual residing in Connecticut) to be so ordered and, as Exhibit B, a proposed Letter of Request pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, directed to the relevant authorities for the United Kingdom and for Jersey. Due to Defendants' counsel's schedule, the subpoena to Mr. Rudd directs that the deposition occur on March 2, 2020, rather than in February 2020.

Thank you for your attention to this matter.

Respectfully submitted,

RASCO KLOCK PEREZ & NIETO, LLC

By: _____
         James Halter

Enclosures

cc:   Counsel of Record (by ECF)

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

CRAIG FRANKLIN,

Plaintiff,

-against-

STEPHEN WATERS, COMPASS ADVISERS
GROUP LLC, COMPASS PARTNERS
ADVISORS, LLP, COMPASS PARTNERS
INTERNATIONAL, LLP, and COMPASS
PARTNERS INTERNATIONAL II, LLP,

Defendants.

Case No. 16 Civ. 9819 (AKH)

## SO ORDERED DEPOSITION
## SUBPOENA TO FRANK RUDD

To: Mr. Frank Rudd
111 West Hill Road
Stamford, Connecticut
06902

**YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify

at a deposition to be taken in this civil action.

| Place: Huseby Court Reporting | Date and Time: |
| Six Landmark Square, Suite 400 | March 2, 2020 10:00 a.m. |
| Stamford, CT 06901 | |

The deposition will be recorded by stenographic means.

You, or your representatives, must also bring with you to the deposition the following

documents, electronically-stored information, or objects, and must permit inspection, copying,

testing, or sampling of the material:

See attached Schedule A

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the

place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and

Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

The name, address, e-mail address, and telephone number of the attorney representing

Plaintiff Craig Franklin, who issues or requests this subpoena, is:

Date: February 10, 2020

James W Halter

James Halter, Esq.
Rasco Klock Perez & Nieto, LLC
555 Fifth Avenue, 17th Floor
New York, New York 10017
jhalter@rascoklock.com
(305) 476-5141.

SO ORDERED: 2/11/2020

Hon. Alvin K. Hellerstein U.S.D.J.

2

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    (i) disclosing a trade secret or other confidential research, development, or commercial information; or
    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## DEFINITIONS

"Project Penguin" shall mean and refer to the series of investments closed by Compass Partners Investments Master Fund, LP and its affiliates (including, but not limited to Compass Partners Investments Co-Invest Fund, LP), (collectively, the "Fund")), in February 2016.

"Carried Interest" or "Carry" shall mean and refer to the portion of the profits of Project Penguin that is consistent with the industry standard use of the term.

"Communication" or "communicate" is used in the broadest possible sense and shall mean the transmittal of information (including, without limitation, facts, ideas, inquiries or otherwise), whether direct or indirect, by any means, and includes, but is not limited to, telephone conversations, in-person meetings, video communications, message exchanges, interviews, correspondence, which has been transmitted by any person or entity to any other person or entity by mail, telex, telegram, email, SMS or text message, iMessages, messaging apps (such as, without limitation, Google Chat, Google Hangouts, Skype, LINE, Bloomberg messaging, Telegram, WhatsApp, Viber), social networking media (such as, without limitation, LinkedIn, Facebook, blogs, Twitter, Doostang, Instagram), or other means of transmission, as well as notes memorializing communications.

"Concerning," in addition to its customary and usual meaning, shall mean discussing, relating to, referring to, reflecting, mentioning, pertaining to, containing an implicit reference to, assessing, characterizing, recording, describing, touching upon, repudiating, summarizing, evidencing, supporting or constituting.

"Document" as used herein shall have the broadest reasonable meaning and includes, but is not limited to, the original and any copies and drafts, regardless of origin or location, of books, photographs, videos, pamphlets, articles, letters, journals, notebooks, memoranda, spreadsheets, Microsoft Excel files, tapes, telegrams, telexes, cable reports, records, study or studies, handwritten notes, working papers, charts, papers, graphs, indexes, data sheets, data processing cards, video tapes, audio tapes, computer tapes, computer discs, emails, SMS or text messages, iMessages, messaging apps (such as, without limitation, Google Chat, Google Hangouts, Skype, LINE, Bloomberg messaging, Telegram, WhatsApp, Viber), flash drives, USB computer attachments, social networking media postings or other information (such as, without limitation, LinkedIn, Facebook, blogs, Twitter, Doostang, Instagram), Outlook calendars, hard copy calendars, diaries, minutes, meeting or call notes, photographed, scanned, transcribed, punched, taped, filed or graphic matter however produced or reproduced, or any of them, in your possession, custody or control (including, without limitation, in the possession, custody or control of any of your attorneys or advisors), or known by you or your counsel to exist. Drafts and non-identical copies of documents, by whatever means made, are deemed and considered separate and distinct documents for purposes of these Requests.

"Including" shall be construed to mean "including, but not limited to" and shall be construed as a term of inclusion, not exclusion.

3

Unless otherwise noted, the relevant time period is February 1, 2016 through the present.

## INSTRUCTIONS

1.      With respect to each of the following Document Requests, You are requested to produce all documents (which shall have the broadest reasonable meaning, including but not limited to electronic and hard copy documents) that are known to You that can be located or discovered by You through diligent effort on the part of Yourself, Your attorneys, agents or representatives. If an objection is taken to any of the following Document Requests, or if a Document Request is otherwise not answered in full, state the specific grounds for the objection and produce documents responsive to the portion of the Document Request to which there is no objection.

2.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a request all responses that might otherwise be construed to be outside of its scope.

3.      The masculine shall include the feminine and neuter and the plural shall include the singular and vice versa.

4.      In the event that any document or communication called for by these Requests has been destroyed, that document or communication is to be identified in writing as follows: original location whether in hard copy or otherwise, addressor or author, addressee, indicated and blind copies, date, subject matter, number of pages, attachments, exhibits or appendices, all persons to whom distributed, shown or explained, date of destruction, manner of destruction, reason for destruction, person who authorized destruction and person who destroyed that document.

5.      If You claim any ambiguity in interpreting any Request or any definition or instruction applicable to a Request, You may not use such a claim as a basis for refusing to respond to the Request, but shall respond to the Request describing the limitations of Your fair interpretation and producing the corresponding documents.

6.      These requests call for all responsive, non-privileged information and documents within Your possession, custody, and/or control as that phrase is defined by relevant statutory and common law. For avoidance of doubt, such information and documents include, without limitation, those in the actual possession of Your attorneys, accountants, work locations, cellular carriers, the "cloud," physical or electronic storage facilities or other places from which You could obtain them upon request.

7.      These requests are continuing in nature so as to require prompt further and supplemental production if You discover, receive or generate additional information between the time of the original responses to the document requests and the time of the final hearing held in this action.

4

### Document Requests

1)      From May 2019 to the present, all projections of the then-current and future value of Project Penguin's investments. In the case of projections identified as "low case," "medium/base case," and "high case" or similar designations or ranges of outcomes, produce all documents reflecting any percentage of probability assigned to each case and the underlying rationale for such probability.

2)      From May 2019 to the present, all cost and/or expense summaries, as well as documents reflecting the total values of the investments of Project Penguin, separate and distinct from any costs and/or expenses of any other investments made by the Fund.

3)      From May 2019 to the present, all projections of the date and/or timing and method of sale or other exit of the investments of Project Penguin.

4)      From February 2016 to the present, all quarterly and annual financial statements of Project Penguin, including both audited and unaudited versions.

5)      From February 2016 to the present, all projections of the then-current and future value of Project Penguin's carried interest.

6)      In native format, a spreadsheet sufficient to determine calculations of carried interest based on the total amount invested in Project Penguin and the total amount returned by Project Penguin.

7)      Documents sufficient to show the Carried Interest of Project Penguin, on a percentage basis, owned by Stephen Waters or to which he is otherwise entitled, including any dilution or allocation to others.

8)      Documents sufficient to show all distributions made to the limited partners of Project Penguin, including but not limited to, refinancings of the underlying assets, the sale of investments, and carried interest since inception.

5

9)      All drafts and final versions of financial statements of Project Penguin for the next quarter.

10)      All documents provided to investors at the Compass Partners Annual Investor Meeting in May 2019.

11)      All drafts and final versions of documents to be provided to investors at the next Compass Partners Annual Investor Meeting, including but not limited to, any Fund outlook reflecting any Project Penguin returns summary.

12)      Documents sufficient to identify the limited and general partners of the entities that have an interest in Project Penguin.

13)      All documents describing the underlying assumptions for the valuation methodology for each of the investments of Project Penguin including, but not limited to, any discount or premium used for the valuation methodology and, in the case of analysis of comparable companies or precedent transactions, all documents describing the companies and transactions used as comparables.

14)      The financial models (in native format) for each of the underlying investments of Project Penguin that show the current operating performance, future projections, and exit scenarios of the investment.

15)      The financial model (in native format) for Project Penguin including, but not limited to, such model showing costs, fees, distributions, and returns from each of the underlying investments on a multiple of invested capital (MoIC) and internal rate of return (IRR) basis to the limited partners, general partner, and carried interest entities.

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CRAIG FRANKLIN, | Case No. 16 Civ. 9819 (AKH) |
| Plaintiff, | ECF Case |
| -against- | |
| STEPHEN WATERS, COMPASS ADVISERS GROUP LLC, COMPASS PARTNERS ADVISORS, LLP, COMPASS PARTNERS INTERNATIONAL, LLP, and COMPASS PARTNERS INTERNATIONAL II, LLP, | |
| Defendants. | |

**LETTER OF REQUEST**

*Request for International Judicial Assistance*
*Pursuant to the Hague Convention of 18 March 1970 on*
*The Taking of Evidence Abroad in Civil or Commercial Matters*

By the United States District Court for the Southern District of New York
Hon. Alvin K. Hellerstein

## TO THE SENIOR MASTER OF THE QUEEN'S BENCH DIVISION; AND

## TO THE ATTORNEY GENERAL, JERSEY, CHANNEL ISLANDS:

The United States District Court for the Southern District of New York presents its

compliments to the Senior Master of the Queen's Bench Division and the Attorney General of

Jersey and requests international judicial assistance to obtain testimony and documents from

Compass Partners Investments Master Fund LP (the "Fund"), a Jersey limited partnership

operated from 26 Mount Row, London W1K 3SQ.

This request is made pursuant to the Hague Convention of 18 March 1970 on the Taking

of Evidence Abroad in Civil or Commercial Matters, as adopted and implemented in the United

1

States of America at 28 U.S.C. § 1781, and in the United Kingdom and Jersey, and the Federal Rules of Civil Procedure. The United States District Court for the Southern District of New York is a competent court of law and equity which properly has jurisdiction over this proceeding, and has the power to compel the attendance of witnesses and production of documents both within and outside its jurisdiction. The Witness (as defined below) has or is likely to have knowledge of, and documents relevant to, the subject matters specified herein.

The testimony of the Witness and the documents produced in connection with its testimony are intended for use at trial, and in the view of this Court, will be highly relevant to Plaintiff's claim for an interest in a private-equity investment of the Fund. The evidence sought in this Letter of Request goes to the heart of significant issues of fact and law that will influence the final determination of the claim brought by Plaintiff.

This request is made with the understanding that it will in no way require any person to commit any offense, or to undergo a broader form of inquiry than he or she would if the litigation were conducted in the United Kingdom. In the proper exercise of its authority, this Court has determined that the testimony and the documents listed herein cannot be secured except by the intervention of the United Kingdom.

## Letter of Request

### 1. Sender

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

### 2. Central Authority of the Requested State

The Senior Master
For the attention of the Foreign Process Section
Room E16
Royal Courts of Justice
Strand
LONDON WC2A 2LL
Foreignprocess@justice.gov.uk

2

And

Mark Temple QC
Law Officers' Department
Morier House
Halkett Place
St. Helier
Jersey
JE1 1DD
law.officers@gov.je

### 3. Person to whom the executed request is to be returned

The Court and representatives of the parties as indicated herein.

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

And

James Halter, Esq.
Rasco Klock Perez & Nieto, LLC
555 Fifth Avenue, 17th Floor
New York, New York 10017

### 4. Specification of the date by which requesting authority requires receipt of the response to the Letter of Request

By March 31, 2020, or as soon as reasonably practicable consistent with the Authorities'

calendar.

## IN CONFORMITY WITH ARTICLE 3 OF THE CONVENTION, THE UNDERSIGNED APPLICANT HAS THE HONOUR TO SUBMIT THE FOLLOWING REQUEST:

### 5. a. Requesting judicial authority

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

3

**b. To the competent authority of:**

The United Kingdom and Jersey

**c. Names of the case and any identifying number**

*Craig Franklin v. Stephen Waters, Compass Advisers Group LLC, Compass Partners Advisors, LLP, Compass Partners International, LLP, and Compass Partners International II, LLP,* Case No. 16 Civ. 9819 (AKH)

**6. Names and addresses of the parties and their representatives**

**a. Plaintiff**

Craig Franklin
c/o James Halter
Rasco Klock Perez & Nieto, LLC
555 Fifth Avenue, 17th Floor
New York, New York 10017

**Representatives**

James Halter, Esq.
Blaine Bortnick, Esq.
Rasco Klock Perez & Nieto, LLC
555 Fifth Avenue, 17th Floor
New York, New York 10017
jhalter@rascoklock.com
bbortnick@rascoklock.com

**b. Defendants**

Mr. Stephen Waters;
Compass Advisers Group LLC; and
Compass Partners Advisors, LLP
2200 Atlantic Street
Stamford, Connecticut 06902

**Representatives**

Robert Holtzman, Esq.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
rholtzman@kramerlevin.com

### 7.  a. Nature of the proceedings

This is a civil action for breach of contract and other claims.

### b. Summary of the complaint

Relevant to this request, the Court granted judgment in Plaintiff's favor and found that Plaintiff is entitled to over five-percent of the carried interest from a series of investments made by the Fund known as Project Penguin.

### c. Summary of defenses and counterclaims

The Court granted judgment in Plaintiff's favor on the issue relevant to this Request so no defenses are relevant. The Request is asserted to determine damages relevant to the judgment in Plaintiff's favor.

### 8.  a. Evidence to be obtained or other judicial act to be performed

Oral testimony from an officer, director, managing agent, or other person who consents to testify on behalf of Compass Partners Investments Master Fund LP regarding the information necessary to determine the projected value of the carried interest in the series of investments in Project Penguin.

Documents and information in the possession of Compass Partners Investments Master Fund LP regarding the projected value of the carried interest in the series of investments in Project Penguin.

### b.  Purpose of the evidence or judicial act sought

The evidence is sought to determine a monetary value of the carried interest to which Plaintiff is entitled.

### 9.  Identify and address of any person to be examined

An officer, director, managing agent, or other person who consents to testify (the "Witness") on behalf of:

Compass Partners Investments Master Fund LP
operated from: 26 Mount Row, London W1K 3SQ

Registered address of: Ordnance House 31 Pier Road, St. Helier, Jersey JE4 8PW

Anthony Marraccino has been identified to the Court as an agent with knowledge of the subject matters below.

**10. Questions to be put to the persons to be examined or statement of the subject-matter about which they are to be examined (article3(f))**

With respect to the following questions and document requests: "Project Penguin" shall mean and refer to the series of investments closed by Compass Partners Investments Master Fund, LP and its affiliates (including, but not limited to, the entity that receives the carried interest portion of the investment, Compass Partners Investments Co-Invest Fund LP), in February 2016; "Carried Interest" shall mean and refer to the portion of the profits of Project Penguin that is consistent with the industry standard use of the term.

Subject matter 1: Management projections of the value of Project Penguin's investments

1) For each of the investments that make up Project Penguin, what is the projected total value of each asset on a quarterly and yearly basis?

   a. Through what period of time into the future is the Fund projecting the asset value of Project Penguin (e.g., 2 years into the future, 3 years, 5 years, etc.)?

   b. What adjustments has the Fund made to the projected total value of each asset compared to the projections prepared in the prior year and the prior quarter?

   c. If projections are identified as "low case," "medium/base case," and "high case" or other similar designations identifying a range of outcomes, what probability is assigned to each such case or outcome and what is the underlying rationale for such probability?

2) What assumptions is the Fund making to determine the projections of the value of each asset?

   a. What are the bases for each such assumptions (e.g., growth rates, exit multiples, debt paydown, margin expansion, etc.)?

3) What is the expected return on a cash-on-cash basis of each of the investments in Project Penguin?

4) What is the expected gross and net return on a cash-on-cash basis of Project Penguin?

5) What is the expected return on an internal rate of return basis of each of the investments in Project Penguin?

6) What is the expected return on an internal rate of return basis of Project Penguin?

7) For each of the investments, what metric (e.g., Revenue, EBITDA, earnings multiple etc.) is the Fund applying to determine the value of each of the investments?

8) For each of the investments, what is the valuation methodology (e.g., comparable companies, sum of parts, discounted cash flow, precedent transactions, liquidation value, etc.) being used to determine the value of each of the investments?

9) For each of the valuations, what, if any, discount or premium is applied to the calculation and why?

Subject matter 2: Costs and expenses of Project Penguin's investments

10) What costs and expenses are attributed to Project Penguin?

11) What additional costs and expenses are expected with respect to Project Penguin during the remaining course of the investments?

12) What costs and expenses have already been paid or reimbursed?

Subject matter 3: Expected date of exit of each of the investments of Project Penguin

13) When does the Fund expect to exit from each of the investments of Project Penguin?

14) How does the Fund anticipate exiting each of the investments of Project Penguin?

15) Have you had any discussions with or retained any investment banks or other advisors to market any of the investments for sale?

   a. If yes, for each investment, describe the substance of the discussions with the banks/advisors.

   b. For each investment, what expected value and time frame have the various banks or other advisors provided with respect to a sale or exit?

16) What, if any, formal or informal offers has the Fund received for any or all of the investments of Project Penguin?

### Subject matter 4: Carried interest distributions

17) What entity earns the Carried Interest in Project Penguin?

    a.  How is such Carried Interest distributed?

    b.  What time frame is expected for distributions of Carried Interest?

    c.  For US citizens and residents, does the Fund expect that the Carried Interest distributions will be treated as capital gains for tax purposes?

    d.  What percentage of the Carried Interest is assigned to Stephen Waters?

    e.  What, if any, adjustments have been made to Stephen Waters' Carried Interest percentage since it was initially distributed in February 2016?

    f.  Has there been any dilution of the Carried Interest since February 2016? If so, who was the recipient of additional Carried Interest, who authorized the additional allocation, and why?

18) What portion of the Carried Interest, on a percentage basis, is owned by Stephen Waters or to which he is otherwise entitled?

19) What, if any, request did the Fund receive to consent to Stephen Waters assigning a portion of his Carried Interest in Project Penguin to Craig Franklin?

    a.  When was such a request made?

    b.  What, if any, response did the Fund provide to such assignment to Craig Franklin?

    c.  What was the basis for the Fund's decision regarding assigning a portion of Stephen Waters' Carried Interest to Mr. Franklin?

20) What, if any, Carried Interest distributions have been made?

21) Based on the Fund's projections, what Carried Interest distributions does the Fund expect to make over the course of the investments?

22) When does the Fund expect to make distributions of Carried Interest?

**11. Documents or other property to be inspected (article 3.g)**

1)      From May 2019 to the present, all projections of the then-current and future value of Project Penguin's investments. In the case of projections identified as "low case," "medium/base case," and "high case" or similar designations or ranges of outcomes, all documents reflecting any percentage of probability assigned to each case and the underlying rationale for such probability.

2)      From May 2019 to the present, all cost and/or expense summaries, as well as documents reflecting the total values of the investments of Project Penguin, separate and distinct from any costs and/or expenses of any other investments made by the Fund.

3)      From May 2019 to the present, all projections of the date and/or timing and method of sale or other exit of the investments of Project Penguin.

4)      From February 2016 to the present, all quarterly and annual financial statements of Project Penguin, including both audited and unaudited versions.

5)      From February 2016 to the present, all projections of the then-current and future value of Project Penguin's Carried Interest.

6)      In native format, a spreadsheet sufficient to determine calculations of Carried Interest based on the total amount invested in Project Penguin and the total amount returned by Project Penguin.

7)      Documents sufficient to show the Carried Interest of Project Penguin, on a percentage basis, owned by Stephen Waters or to which he is otherwise entitled, including any dilution or allocation to others.

8)      Documents sufficient to show all distributions made to the limited partners of Project Penguin, including but not limited to, refinancings of the underlying assets, the sale of

9

investments, and Carried Interest since inception.

9)     All drafts and final versions of financial statements of Project Penguin for the next quarter.

10)     All documents provided to investors at the Compass Partners Annual Investor Meeting in May 2019.

11)     All drafts and final versions of documents to be provided to investors at the next Compass Partners Annual Investor Meeting, including but not limited to, any Fund outlook reflecting any Project Penguin returns summary.

12)     Documents sufficient to identify the limited and general partners of the entities that have an interest in Project Penguin.

13)     All documents describing the underlying assumptions for the valuation methodology for each of the investments of Project Penguin including, but not limited to, any discount or premium used for the valuation methodology and, in the case of analysis of comparable companies or precedent transactions, all documents describing the companies and transactions used as comparables.

14)     The financial models (in native format) for each of the underlying investments of Project Penguin that show the current operating performance, future projections, and exit scenarios of the investment.

15)     The financial model (in native format) for Project Penguin including, but not limited to, such model showing costs, fees, distributions, and returns from each of the underlying investments on a multiple of invested capital (MoIC) and internal rate of return (IRR) basis to the limited partners, general partner, and carried interest entities.

10

**12. Any requirements that the evidence be given on oath or affirmation and any special form to be used (article 3(h))**

The testimony shall be transcribed and given under oath.

**13. Special methods or procedures to be followed (e.g., oral or in writing, verbatim, transcript or summary, cross-examination, etc.) (articles 3,I and 9)**

This Court respectfully requests that the Witness be summoned by the executing court to appear in court to be heard on a date mutually agreed upon by the deponent and the parties or at a time and/or place to be determined by you.

This Court respectfully requests that the executing authority commission permit counsel for Plaintiff, as a private examiner, to ask questions about the subject matters identified in section 10 and the documents described in section 11. The Court further requests that the judge presiding over the questioning of the Witness permit representatives of the parties listed above in Section 6 to attend and ask follow-up questions and cross-examine the Witness at the culmination of the initial examination, as may be warranted by the answers given during the initial examination.

The Court further requests that the testimony be recorded on videotape, and that a court reporter be permitted to attend the deposition and create a verbatim written transcript of the proceedings.

This Court further requests that the Witness be directed to produce the documents identified herein not later than two weeks before the date of the examination.

This Court further requests that all books, papers, and other documents or articles that the witness identifies at the oral examination be marked as exhibits and attested.

The Court respectfully requests that you return all such materials under cover duly sealed and addressed to the Honorable Alvin K. Hellerstein, United States District Judge, Southern District of New York, 500 Pearl Street, New York, New York 10007, USA.

In the event that the evidence cannot be taken in the manner requested, the Court requests that the evidence by taken in accordance with the directions of the presiding Judge, taking into consideration the Federal Rules of Civil Procedure.

11

**14. Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified (article 7)**

Please notify the following counsel regarding the time and place for the execution of the

Request:

James Halter, Esq.
Blaine Bortnick, Esq.
Rasco Klock Perez & Nieto, LLC
555 Fifth Avenue, 17th Floor
New York, New York 10017
jhalter@rascoklock.com
bbortnick@rascoklock.com
Tel: +1 (305) 476-5141

Robert Holtzman, Esq.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
rholtzman@kramerlevin.com

**15. Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request (article 8)**

No attendance of judicial personnel is requested. Although pursuant to the Federal Rule

of Civil Procedure of the United States, depositions may be taken and documents may be

requested and produced without involvement of judicial personnel, it is accepted that the

authority may appoint such judicial personnel as may be appropriate.

**16. Request for expeditious execution of the Letter of Request**

Plaintiff asserts other claims that cannot be resolved until the matters addressed herein

are resolved. Thus, this Court respectfully requests that the Letter of Request will be executed

by March 31, 2020 or as soon thereafter as possible.

**17. Specification of privilege or duty to refuse to give evidence under the law of the State of origin (article 11, b)**

Plaintiff does not believe that the Witness benefits from any privilege or duty to

refuse to give the requested evidence and does not endorse the assertion of any such privilege

or duty.

12

**18. Fees and Costs**

The fees and costs incurred which are reimbursable under the second paragraph of article 14 or under article 26 of the Convention will be borne by Plaintiff. Plaintiff's payment of such fees and costs is without prejudice to their making a subsequent request to be reimbursed for these costs by other parties in this action or as assigned by the Court.

## Conclusion

In the spirit of comity and reciprocity, this Court hereby requests international judicial assistance in the form of this Letter of Request to obtain the oral examination, under oath, of the Witness of the subject matters and questions listed above and of the documents described above. This Court expresses its sincere willingness to provide similar assistance to the United Kingdom and Jersey if future circumstances should require.

DATED:

*Feb. 11, 2020*

B y

Hon. Alvin K. Hellerstein, U.S.D.J.